Again, this was Chernykh v. Holder. Good morning, Your Honors, and may it please the Court, I'm Anne Peterson on behalf of the petitioner, Natalya Chernykh. This case really hinges on the ineffective assistance of counsel claim. If petitioner's former counsel had acted competently and submitted witness statements which were easily available to her during the pendency of the petitioner's case before the immigration judge, I have no doubt that Judge Miriam Hayward would have granted her asylum. Instead, we're sitting here almost six years later, and Ms. Chernykh remains unsure about her safety and security. The BIA's ruling on the motions to reopen is reviewed for abusive discretion. However, questions of law, such as claims of due process violations arising from ineffective assistance of counsel, are reviewed de novo. Here, Ms. Jacobson, the petitioner's former counsel, acted with insufficient competence or diligence. A competent attorney would have collected and submitted available material testimony and affidavits and documentary evidence. Now, you've got to keep this straight. Are you talking about when she appeared at the IJ hearing, or are you talking about her motion to reopen before the IJ, which was then routed up to the BIA? So keep it clear. Okay? Let's start with during the pendency of the removal hearings before the immigration judge. Okay. These affidavits were easily available prior to the judge's decision. Ms. Jacobson – we know this because Ms. Jacobson admits it herself. She knew one of the affiants. He was a former client of hers. And she also – the BIA agrees with that. The BIA's first decision in 2009 states that these affidavits were easily available. Moreover, former counsel admits that she knew these were material. She had asked her client if maybe she could get an affidavit from the pastor at her church, Pastor Valerie, and then when she said that Valerie declined to do an affidavit, that's where she stopped. So clearly she had an indication that these would be valuable material, and we know now that, of course, they were. Because the judge said that had she had evidence of physical abuse or violence against evangelical Christians in Kazakhstan, that she would have come to a contrary – likely would have come to a contrary conclusion. That evidence was available in these affidavits and witnesses. To answer your point about the motion to reopen, she failed again by not producing additional evidence at the time of the motion to reopen. She submitted only evidence that she could have easily obtained, with the exception of two documents, country conditions documents. She submitted only evidence that she could have easily obtained prior to the rendering of the judge's decision. That is ineffective assistance of counsel. Moreover, she provided ineffective assistance of counsel because competent counsel would have asked for a continuance in order to submit additional evidence before the immigration judge at the time of the hearing. The letter that Ms. Jacobson wrote in response to the Lozada complaint states that there was an off-the-record conversation at some point. And in my experience as a practitioner, usually the judge, before rendering an extemporaneous oral decision, will have an off-the-record conversation where they'll give an indication of what's about to happen in the decision. Are we citing you in the record? I mean, I don't think that that's in our record. I do think – well, it's in the record that there was an off-the-record conversation. It's in the record in the letter that there, on pages 98 of the administrative record, there was an off-the-record conversation. And also, you can see it in the transcript at 652. But we don't know what they say, so I don't think we can then surmise about what would have happened or not happened. That's fair, Your Honor. I would say, however, that at some point it should have become clear to Ms. Jacobson that this was going to be problematic, and clearly it did before she even got to court, because she had sought this evidence. But she did present some evidence. She did present some evidence, but that evidence is not sufficiently compelling. And I understand that my firm has submitted a number of briefs in this case, but frankly, I'm not convinced that the evidence that she submitted compelled a conclusion that there would be a well-founded fear of future persecution. Certainly, the judge asked for and made it clear that evidence of physical violence or more severe denial of rights would have met that burden. And the affidavits have that in space. And the affiance, at least one of them, says that he would have testified. And that's the case. Now, those – just getting back to Judge Huff's question – those affidavits were – were – they were the ones that submitted it to the BIA. They were submitted to the – well, first they were submitted to the immigration judge with a motion to reopen, but then Jacobson submitted the notice of appeal during the pendency of the motion to reopen and therefore divested jurisdiction. So yes, the short answer, I guess, would be yes. They got – they were presented to the BIA and her – and she then requested a remand. Correct. So I've read all of those declarations. I mean, I read her motion that she submitted to the BIA. Yes. And, you know, there's – it's very general. I'm sorry? Very general. I came away with the impression that – that nontraditional religions or members of – people who participate in nontraditional kinds of religion in Kazakhstan, they may have a tough time, but I didn't get the impression that there's a lot of violence against. Well, the affidavits actually, Your Honor, specifically identify examples that they've personally – they have personal knowledge of. The judge – the immigration judge – well, let me give you some examples. Okay. Church members being unlawfully detained for proselytizing, police beating several church members after detaining them, missionaries being attacked by Muslims and police not taking complaints, or instead, arresting the missionaries who had been beaten and fining them. Are those tied to any particular incidents? These are incidents that are – No, I mean, like, by a particular date or location or anything? Well, that's where testimony of these witnesses would have come in handy, Your Honor. And certainly, that could have been explored further on testimony. Frequently, in affidavits submitted to immigration courts, there are a list of maybe some examples, and then things are explored in more detail in testimony. But that opportunity was not provided to the Petitioner because her counsel never brought these witnesses forward in the first place or even gave her any indication that they were material to her claim, which clearly they were. Some additional examples that you should be aware of, Your Honor, is family members of converts being killed, their homes being set on fire, and the government's death threats, the government not re-registering organizations, which is actually still going on. And had this – had she been told that these things were material and encouraged to get additional information, had Attorney Jacobson just made the effort to ask the question, do you know anybody else who has knowledge of this, they could have satisfied the judge's desire to hear from either lay or expert witnesses that could corroborate any of her fears. Because, of course, Ms. Chernyk didn't have firsthand knowledge. She wasn't a baptized evangelical Christian until after she had been in the United States for a couple of years. And so she hadn't been back there to experience what this was like. These men, Pastor Garneau, Mr. Venikoff, Pastor Wagner, could all testify to the consequences of trying to practice her religion under the Kazakhstan – Kazakh regime. Counsel, I have two questions for you from Judge Gould. Yes, Your Honor. First of all, I have the impression that at some point she testified that despite her conversion to the evangelical Christian church here, that on return she could affiliate with a registered church and practice her Christian religion that way. So first of all, is that true, that she said that? And if so, what's the significance of that? Yes, it is true that she said that, Your Honor. And the significance of that is really – there's really – it's a difference without a meaning, because the registered Christian churches at that time were also being persecuted. But the new country conditions that we submitted also show that a lot of – with our motion to reopen in 2010 – also show that a lot of the churches are not being allowed to re-register, and specifically religious minorities. And the ban that we mention in our motion to reopen, the religious ban, has in fact been passed. So there's been a decrease in the opportunity to register. Specifically, they're not re-registering evangelical Christian organizations. So she's – so it's irrelevant, really, if she was going to join a registered church or not. She would face the same persecution. Well, if she joined, like, a Presbyterian church, would that be persecuted? It would, Your Honor. For example, Grace Presbyterian has lost their registration and has experienced numerous incidents of persecution. And that is also outlined in – to a lesser degree in Mr. Popstove's letter, which we submitted with our motion to reopen in 2010. Of course, that's a little bit out of date now, but it's touched on. Moreover, there's – I'd actually like to reserve the rest of my time here. Okay. That's fine. Thank you. Back again. May it please the Court. Nicole Nardone, attorney for the Respondent of the United States. There are many convoluted issues in these two consolidated appeals. And I'm going to try to run through it sort of chronologically so that you can sort of see the big picture here. I think that might clarify things a little bit. Although there are, as I said, many issues presented here, the question is whether or not the evidence is ever compelled to finding that Ms. Turnyak has a well-founded fear of persecution in Kazakhstan as an evangelical Christian. Because Petitioner converted to Christianity in the United States, her fears are entirely prospective. That means they're looking forward. And she has to establish, therefore, that they're both subjectively and objectively reasonable. She's made no showing of individualized risk. And she's also – and the agencies properly found that she presented no credible, direct, specific evidence of a systemic pattern or practice of persecution against Christians in Kazakhstan. There were a number of documents before the immigration judge that Attorney Jacobson – and I will address her in effective assistance to counsel claim issue later – but that were presented before the IJ that are all really ultimately, cumulatively presented again and again and again, because I think these patterns have been persisting in Kazakhstan. And in 2007, for example, the Religious Freedom Report indicated that the Constitution does provide for religious freedom and that religious groups, for the most part, worshiped without government interference. It notes, however, that local officials often attempted to limit the practice of nontraditional groups. But it also indicates at the very top of the 2007 Religious Freedom Report that higher level officials or courts occasionally intervene to correct these attempts. So there does seem to be a distinction here also between the national government and what it's doing and the local governments and Muslim police on the local level. I think that's an important thing to note. And as the immigration judge did note, there is also an increasing government control over religious minorities, and specifically with regard to requiring registration. It seems the government is trying to keep track of these organizations, and there have been indications of minority groups complaining about seizures, fines, and detentions and other types of harassment. However, substantial evidence supports the immigration judge's finding that this does not exist in harm against a religious minority such that this Petitioner that it compels the Petitioner that this finding that this Petitioner has a well-founded fear of future persecution. As this Court has observed, persecution is an extreme concept, and discrimination on the basis of race and religion, even if morally irreprehensible, does not amount to persecution under the INA. Moreover, unlike this Petitioner, the immigration judge specifically found this Petitioner is unlikely to even necessarily experience this level of harassment because she did testify that she would be willing to practice with a registered organization. And it's also important to note that in the 2007 Religious Freedom Report, there are two large registered Baptist organizations totaling about 11,000 people currently in the Kagasan. Although some of the evidence, and it's also important to note, and this, again, goes to the ineffective assistance of counsel claim, that in those reports before the IJ, including the 2007 report, there were notes of incidents of not only clashes between minorities, but of local police abuses. So this information was before the immigration judge at the initial – it was put before the immigration judge by Attorney Jacobson. For example, there's an incident on page 325 of the record that discusses the missionary Presbyterian Christians and a clash with the local Muslim missionaries where the missionaries were threatened, beaten, and exiled from the village. So there were – they were threatened and beaten by Muslims. There's also an incident discussing where the local Muslim police had bulldozed a Hare Krishna commune, and there were police beatings in that incident. So just so the Court can see later on how this issue, although Petitioners argue was not put before the immigration judge by Attorney Jacobson, it clearly was part of the record. And moving on to the issue of ineffective assistance of counsel, the agency did not abuse its discretion in denying Petitioner a motion to reopen. First of all, the Board properly denied to toll the time limit on the motion to reopen due to ineffective assistance of counsel. In order to establish ineffective assistance of counsel, Petitioner would need to show that her – Attorney Jacobson's performance was insufficient and that it caused her prejudice. There's no evidence that Attorney Jacobson's performance was insufficient. Rather, the evidence shows that she was actually quite diligent. She submitted three timely State Department reports. She submitted numerous articles discussing challenges faced by the religious minorities in Kazakhstan. This Court has noted that State Department reports are reliable information regarding political circumstances in foreign countries. And Attorney Jacobson significantly in her letter, in response to the allegations against her, she submitted a two-page, very detailed letter about her interactions with her client. And the Petitioner alleges that her attorney never asked her to collect information regarding from her church or otherwise. However, I mean, it's important to note that there is a letter from pastor – from another pastor that was submitted by the Petitioner before the immigration judge. So that contradicts her claim. But furthermore, Attorney Jacobson does talk about how she spent eight hours – put eight hours of research into – into her representation and that she believed that she supplied adequate evidence of persecution, clearly showing that, you know, her decisions were tactical and reasonable. And another important thing to note is, although Petitioner talks about three statements, claiming that these three statements had not been submitted, if you look closely at the motion to reopen in which the Petitioner claimed that she received an effective assistance of counsel, what the Petitioner said is, if I had been informed by my attorney that I could submit information regarding conditions in Kazakhstan, I would have asked pastors in my church. The two pastors that were in her church at the time were Darnell and Wagner. They both are people who claim to be pastors at her church. This other person, Venikoff, if you look at Attorney Jacobson's letter, she indicates that this is actually a former client of hers. She only went back to ask this Venikoff for additional information after the immigration judge had indicated that – that he didn't find the information sufficient. So she – she went digging through her former clients to actually find this person. And the fact that she didn't submit a statement by a former client, which to me seems like she just went the extra mile to actually then put even more information before the immigration judge, does not indicate that she was an insufficient counsel. Again, the Petitioner did not establish prejudice from Jacobson's actions. As the – as the Board found, the Board noted, again, that there were two documents that were relevant to evangelicals that were submitted upon the motion to reopen by Attorney Jacobson. It was the Venikoff statement that I just mentioned and the Grace Church raid. And again, the immigration judge said, well, this – I'm sorry, the Board said, well, this did not render Petitioner's proceedings unfair because – and this is reasonable because this evidence was, again, cumulative. What was stated by Venikoff was that there were these incidents of societal – societal violence, basically, and often unreported incidents of violence. And he also discusses missionaries being attacked by Muslims. Again, an incident that was – that was documented in 2007 reports before the immigration judge. And again, the other article that was a Grace Church raid. So again, raids on churches, which is something that was also in the first reports. So the Board found that – that these – that these documents certainly did not prejudice the Petitioner because they, again, really just repeat the same theme, which is the evidence of all of these types of harms were – were present in the initial reports. And the immigration judge, looking at all of these things, decided reasonably that it simply does not establish, similar to the Indonesian cases that this Court has looked at, it simply does not establish that there's a well-founded fear of future persecution because it's not showing a pattern and practice of – of government-sanctioned persecution. Although there are these incidents, perhaps, where, you know, you have maybe a local police abuses, or you have police – or you have incidents of Muslim – local Muslims abusing Baptists, there's certainly not been ever presented, even upon now a motion to reopen, evidence that this is a systemic problem that's been sanctioned by the national government. Indeed, what's really shown here is that the national government has been – has been – has made some efforts to register these churches and that a lot of Baptist churches have registered with the government. Could you discuss – so separate from the IAC claim, the motion to reopen, the Petitioner says that there's new repressive law, while some may have been declared unconstitutional. Is there validity to the argument that cumulatively send it back for further consideration of change conditions on equitable principles? There's not, Your Honor, because, again, these – these laws have been – these efforts by the national government to restrict and to require registration of these minority groups has been happening since – has been happening since 2007, when the immigration judge first looked at this issue. So the question is – I mean, on the motion to reopen, the question is, did – was there an abuse of discretion? Did the immigration judge abuse of discretion in denying it, such that it did show some material change in country conditions? And this simply did not, because, again, although the government has been sort of tweaking the laws and making new proposals for changes to the laws, those laws have pretty consistently been enforced in the same manner, which is to say that they've – yes, there have been some results of harassment of – of minority religions to register themselves with the government, and they've been, you know, making sure that people are not practicing when they haven't registered or not conducting missionary work when they have not been registered with the government. There's no indication that these incidents are rising to the level of persecution by the – by the national government, although, like I said, the Petitioner talks a lot about these statements that were submitted by the pastors. I'd like to also point out that the board importantly noted that – that there was no discussion of specifics in either any of those statements, and even in the ineffective assistance of counsel claim, those – there's specifics, the specifics of these incidents that are happening where people are getting abused and the – and the national government is ignoring it. Those incidents have never come to light. They've never come to light before the immigration judge on the motion to reopen or on the motion to reopen for ineffective assistance of counsel. They're simply not there. There's just no evidence here that compels a finding that Petitioner faces a future persecution in Kazakhstan. Is there any further questions? No, thank you. No questions here. I had about a minute, or whatever it was. I'm sorry, Your Honor. Three minutes. Thank you. At the outset, I think it should be noted that the BIA is trying to have it both ways. On the one hand, the board is saying that they have adopted the IJ's decision – and I'm just referring to the 2009 decision – they've adopted the immigration judge's decision that there was not well-founded fear of future persecution because there was no evidence of physical violence or further denial of rights. On the other hand, they're saying that all of the evidence is cumulative and the two just don't line up. And also, on the one hand, they're saying that all of the evidence that Ms. Jacobson presented with the motion to reopen could have been previously introduced. And on the other hand, they're saying that there is no evidence of ineffective assistance of counsel. This is illogical, and it is also irrational and contrary to law. And therefore, abuse of discretion. As to the country conditions being cumulative, that also defies logic. The specific issues that the immigration judge and the BIA in adopting her decision pointed to was that there was no evidence of physical harm. Had there been evidence of physical harm that the immigration judge stated, then she would have likely come to a contrary conclusion. Now, all of the affidavits submitted talk about specific incidences of harm. Dates and names maybe could have been supplied had they been – had an opportunity to testify. But because of Ms. Jacobson's failure to pursue this evidence, to investigate, to submit easily available documentary and witness – evidence and witness testimony, Ms. Chernek, the petitioner, was unable to present her claim. And that is a fundamentally unfair scenario. And that has resulted in the denial of her asylum claim. Now, as far as new country conditions and changes in the law, the ban has, in fact, been passed. There has been a drop by 37 percent in registered religious groups. And people proselytizing in their own home have been arrested, beaten, charged by police. And it's not a requirement that a national police officer be the perpetrator of that violence for a person to have a well-founded fear of future persecution based on the same protected ground of religion. And these are evangelical Christians who are similarly situated to Ms. Chernek, who stated that this was her salvation from depression, and that she finds it as her duty to God to share it with other people. This, in effect, denies her of religion. And that in itself is persecution. Therefore, she has a well-founded fear. Thank you. And I would ask that the Court reverse and remand for further findings and the motion to reopen. Thank you, Your Honors. Roberts. Thank you. The matter is we appreciate your arguments. It travels, and the matter is submitted.
judges: Huff, Gould, Paez